**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0943-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ASHAD T. WINSTEAD, a/k/a
TEE,

    Defendant-Appellant.

_____

Submitted March 18, 2025 – Decided March 26, 2025

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment Nos. 17-03-0513 and 17-05-0699.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Dianne Glenn, Designated Counsel, on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Ashad Winstead appeals from the October 27, 2023, Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

We glean these facts from the record. Defendant was charged in two Bergen County indictments, Nos. 17-03-0513 and 17-05-0699. Indictment No. 17-05-0699 charged defendant with third-degree burglary, N.J.S.A. 2C:18-2, stemming from defendant breaking into a Wells Fargo Bank in Hackensack on September 30, 2016, and attempting to steal money from a safe deposit box. Indictment No. 17-03-0513 charged defendant with second-degree robbery, N.J.S.A. 2C:15-1(a)(2) (count one), and third-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count two). The charges stemmed from defendant breaking into a Burger King in Hackensack where he worked to steal money from the safe on January 2, 2017, and threatening another person with bodily injury when he tried to stop defendant.

On October 11, 2017, defendant entered a negotiated guilty plea to second-degree robbery, as charged in Indictment No. 17-03-0513, and third-degree burglary, as charged in Indictment No. 17-05-0699. Under the terms of the plea agreement, defendant would be sentenced to special probation for five

2

years under N.J.S.A. 2C:35-14 (Track One), and admitted into Recovery Court[1] with inpatient substance abuse treatment and recommended aftercare as conditions of probation. In the event defendant's probation was terminated, the State would seek an alternate sentence of six years' imprisonment on the robbery charge, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and three years' imprisonment on the burglary charge, to run consecutively.

On October 19, 2017, defendant was sentenced. The sentencing judge found aggravating factors three, six, and nine based on the high risk of re-offense, the extent of defendant's prior criminal record, and the need for deterrence, respectively. See N.J.S.A. 2C:44-1(a)(3), (6), (9). The judge also found mitigating factor ten, that defendant was particularly likely to respond well to probationary treatment. See N.J.S.A. 2C:44-1(b)(10). Concluding that the mitigating factor outweighed the aggravating factors, the judge sentenced

---

[1] At the time of defendant's plea, the diversion court was called "Drug Court." "In 2022, the [Administrative Office of the Courts] . . . changed the name of the program to Recovery Court . . . ." State v. Matrongolo, 479 N.J. Super. 8, 22 (App. Div. 2024). As it had been renamed "Recovery Court" by the time defendant was terminated from probation, we refer to it by that name for consistency.

defendant in accordance with the plea agreement.  Defendant did not file a direct appeal.

On September 1, 2022, defendant appeared for a violation of probation (VOP) hearing.  At the outset, the judge recounted the procedural history of the case, noting that on June 2, 2022, defendant had stated he did not want the Public Defender's Office or its attorney assigned to Recovery Court to represent him.  As a result, the judge had conducted a <u>Crisafi</u>[2] hearing on June 16, 2022, and "determined that [defendant] ha[d] made the choice to represent himself[] and . . . did so knowingly and intelligently."  The judge added that defendant had appeared pro se at a July 14, 2022, case management conference and had been provided various documents by the State.[3]

After the judge explained to defendant that the State would only have to prove that defendant committed one of the nine charged violations of probation by a preponderance of the evidence, defendant stated that it was "obvious that

---

[2] <u>State v. Crisafi</u>, 128 N.J. 499, 509-12 (1992) (outlining the procedure trial courts must follow in considering a criminal defendant's request for self-representation and determining the validity of the attendant waiver of the right to counsel).

[3] The transcripts of the June and July 2022 hearings were not provided in the record on appeal.

A-0943-23

[he had] violated conditions of [his] probation[,] . . . especially the fact that [he had been] charged with new offenses." He then admitted to eight of the nine charges, and the State withdrew the remaining charge. After a colloquy with defendant, the judge determined that defendant entered an intelligent, knowing, and voluntary guilty plea to violating probation in accordance with Rule 3:9-2. See State v. Lavoy, 259 N.J. Super. 594, 602 (App. Div. 1992) (applying the provisions of Rule 3:9-2, governing guilty pleas, to violation of probation proceedings).

The State sought termination of probation and imposition of the alternate sentence, pointing out that this was defendant's fourth VOP, having been continued on probation despite violating his probation in 2018, 2019, and 2020.[4] Defendant acknowledged leaving several treatment programs for a variety of unauthorized reasons, including medical issues, but sought "another opportunity" to address his addiction. At the conclusion of the hearing, the judge found that aggravating factors three, six, and nine still applied, but that mitigating factor ten no longer applied. Consequently, the judge terminated

---

[4]   The record indicates that defendant repeatedly absconded from inpatient programs, was noncompliant with substance abuse treatment and counseling, did not permit his probation officer to conduct home visits, was charged with new criminal offenses, failed to pay court-imposed financial obligations, and failed to surrender as required by court order.

defendant's probation without improvement and sentenced him in accordance with the plea agreement to six years' imprisonment on the robbery charge, subject to NERA, and a consecutive three-year term on the burglary charge.

On November 1, 2022, defendant filed a timely PCR petition challenging the sentence as being "manifestly excessive" and asserting the judge failed to consider appropriate mitigating factors or articulate how he had balanced the aggravating and mitigating factors. Assigned counsel later submitted a supporting brief asserting that trial counsel at the original sentencing hearing was ineffective by failing to present applicable mitigating factors and object to the court considering improper aggravating factors.

On October 27, 2023, the PCR judge conducted oral argument. At the commencement of the hearing, PCR counsel provided the State and the judge with transcripts of the June and July 2022 case management hearings and requested an adjournment or, alternatively, an opportunity to raise a new ground for PCR, affording the State a chance to respond. Although the transcripts had been prepared on September 15, 2023, PCR counsel stated that he had only recently reviewed the transcripts and that they demonstrated defendant had received ineffective assistance of counsel (IAC) from the Public Defender attorney assigned to Recovery Court. Specifically, PCR counsel claimed that

trial counsel misrepresented at the June 2, 2022 hearing that defendant could not request a different attorney from the Public Defender's Office. As a result, defendant proceeded to represent himself believing he had no other option. The State objected to the adjournment.

The judge denied the adjournment, explaining:

> I am prepared to go forward with what has been filed timely, not including the three transcripts that were received not at the [eleventh] hour, but at the 11:59th hour . . . .
>
> . . . [T]his case was originally scheduled . . . to be heard at 9 . . . a.m. The transcripts came in at 9:45 a.m. this morning. And the only reason why [the hearing] was put off was because of a funeral of a former colleague.
>
> I am not going to delay this matter any further for the [d]efense to bring up new issues that haven't been pled or even raised by the moving papers. So, . . . [the] request is denied[,] and I'll hear argument as to the issues that are before the [c]ourt.

Following oral argument, the judge recounted the factual background and procedural history of the case, applied the governing legal principles, and denied defendant's PCR petition without an evidentiary hearing. In an oral opinion on the record, the judge determined defendant failed to establish a prima facie claim of IAC or that his bargained-for sentence was illegal. See State v. Gaitan, 209 N.J. 339, 349-50 (2012) ("To establish a claim for [IAC], a defendant must show

deficient performance by counsel 'so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment' and that the defendant was prejudiced by the attorney's performance." (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 52 (1987))); R. 3:22-2 (establishing grounds for PCR petitions, including imposition of an illegal sentence).

The judge specifically rejected defendant's IAC claim that his attorney was ineffective at the original sentencing by failing to argue that, among other things, his age was a mitigating factor. The judge noted that by virtue of his admission to Track One of Recovery Court, defendant received a probationary disposition on a second-degree offense and avoided a sentence of imprisonment. See Matrongolo, 479 N.J. Super. at 20 ("Track One was available to defendants 'subject to a presumption of incarceration' who were eligible for 'special probation' under N.J.S.A. 2C:35-14 . . . ."). According to the judge, mitigating factor fourteen was not a mitigating factor when defendant committed the underlying offenses and defendant's VOP charges occurred after he turned twenty-six. See State v. Lane, 251 N.J. 84, 87 (2022) (holding that the 2020 amendment to N.J.S.A. 2C:44-1 "to add a new mitigating factor fourteen: '[t]he defendant was under [twenty-six] years of age at the time of the commission of

the offense'" applied prospectively (first alteration in original) (quoting N.J.S.A. 2C:44-1(b)(14))). The judge entered a conforming order the same day and this appeal followed.

On appeal, defendant raises the following single point for our consideration:

> THE PCR JUDGE ABUSED ITS DISCRETION IN DENYING PCR COUNSEL'S REQUEST FOR AN ADJOURNMENT TO AMEND ITS BRIEF TO INCLUDE AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM BASED UPON RECENTLY ACQUIRED VIOLATION OF PROBATION CASE MANAGEMENT TRANSCRIPTS.

We begin by setting out guideposts that inform our review. "New Jersey long has embraced the notion that '[a] motion for an adjournment is addressed to the discretion of the court, and its denial will not lead to reversal unless it appears from the record that the defendant suffered manifest wrong or injury.'" State v. Hayes, 205 N.J. 522, 537 (2011) (alteration in original) (quoting State v. Doro, 103 N.J.L. 88, 93 (E. & A. 1926)). Thus, we "review a trial court's denial of a request for an adjournment 'under an abuse of discretion standard.'" Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 233 (App. Div. 2020) (quoting State ex rel. Comm'r of Transp. v. Shalom Money St., LLC, 432 N.J. Super. 1, 7 (App. Div. 2013)). In making this determination, we examine the proceeding

in question and the reason defendant sought an adjournment. See Hayes, 205 N.J. at 537-38 ("What constitutes a reasonable adjournment . . . depends generally upon the surrounding facts and circumstances." (quoting State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985))). "Whether there was an abuse of discretion depends on the amount of prejudice suffered by the aggrieved party." Escobar-Barrera, 464 N.J. Super. at 233.

Here, defendant offered no justification for PCR counsel's delay in submitting the transcripts other than noting protocol requires the Public Defender's Office to forward the transcripts to PCR counsel. That does not explain why the transcripts were proffered after the scheduled start time of the hearing over five weeks after they had been transcribed. In addition, defendant has not shown how the transcripts supported his new IAC claim or how he was prejudiced by their absence. Indeed, defendant has not demonstrated how the assignment of a different attorney from the Public Defender's Office would have changed the outcome of the VOP hearing inasmuch as the resolution of defendant's VOP fully complied with N.J.S.A. 2C:35-14.

Under N.J.S.A. 2C:35-14(f),

> (1) Upon a first violation of any term or condition of the special probation authorized by this section or of any requirements of the course of treatment, the court

in its discretion may permanently revoke the person's special probation.

(2) Upon a second or subsequent violation of any term or condition of the special probation authorized by this section or of any requirements of the course of treatment, the court shall, subject only to the provisions of subsection g. of this section,[5] permanently revoke the person's special probation unless the court finds on the record that there is a substantial likelihood that the person will successfully complete the treatment program if permitted to continue on special probation, and the court is clearly convinced, considering the nature and seriousness of the violations, that no danger to the community will result from permitting the person to continue on special probation pursuant to this section. . . .

(3) In making its determination whether to revoke special probation, and whether to overcome the presumption of revocation established in paragraph (2) of this subsection, the court shall consider the nature and seriousness of the present infraction and any past infractions in relation to the person's overall progress in the course of treatment, and shall also consider the recommendations of the treatment provider. . . .

---

[5] Under subsection g, when the presumption of revocation applies, "the court may, in lieu of permanently revoking the person's special probation, impose a term of incarceration for a period of not less than [thirty] days nor more than six months, after which the person's term of special probation pursuant to this section may be reinstated." N.J.S.A. 2C:35-14(g). In making the determination, "the court shall consider the recommendations of the treatment provider with respect to the likelihood that such confinement would serve to motivate the person to make satisfactory progress in treatment once special probation is reinstated." Ibid.

11

(4) If the court permanently revokes the person's special probation pursuant to this subsection, the court shall impose any sentence that might have been imposed, or that would have been required to be imposed, originally for the offense for which the person was convicted or adjudicated delinquent. The court shall conduct a de novo review of any aggravating and mitigating factors present at the time of both original sentencing and resentencing. . . .

This was defendant's fourth VOP, triggering a presumption of revocation. Given the nature and seriousness of defendant's present and past infractions as well as defendant's lack of progress in treatment, revocation of probation was a virtual certainty. Upon revoking probation, the judge imposed the alternate sentence after conducting a de novo review of the aggravating and mitigating factors. As the judge recalled in sentencing defendant on the VOP,

> I remember the time that [defendant] was on the bracelet and what a struggle that was and what reports we received on his going here, there, and everywhere except where he was supposed to be[.] . . . I appreciate that [defendant] has explained all of this, but there has been so much person-power and so much attention given to [him] that . . . it doesn't appear that he's accepted any of this. He has just continued to violate . . . and[,] certainly, based upon his behavior, I cannot find that continuing him in Recovery Court would serve any purpose . . . .

On this record, we discern no "manifest wrong or injury," Hayes, 205 N.J. at 537, and no prejudice to defendant in the denial of his request for an

12

adjournment. Even if the adjournment had been granted and the transcripts had been considered, contrary to defendant's claim, they did not support his assertion that he did not "knowingly and intelligently choose to represent himself." At the VOP hearing, the judge confirmed that defendant had "indicated he did not wish to have the [P]ublic [D]efender or [the Public Defender attorney assigned to Recovery Court]" as his attorney. The judge also recounted that he had found defendant "knowingly and intelligently" waived his right to counsel and opted to represent himself at the June 16, 2022 Crisafi hearing. Defendant did not dispute the judge's recapitulation of the procedural history.

Additionally, in response to the judge's inquiry at the beginning of the VOP hearing, defendant again confirmed he was representing himself. He cannot belatedly contradict these assertions. See State v. Simon, 161 N.J. 416, 444 (1999) ("[S]olemn declarations in open court carry a strong presumption of verity." (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977))); see also Crisafi, 128 N.J. at 518 ("At some point, a trial court confronted with a wily defendant may consider the efficient administration of criminal justice and force a defendant to choose between appointed counsel and proceeding pro se." (italicization omitted)).

Moreover, defendant's purported justification for wanting another

attorney "based upon the lack of interaction he had received from . . . counsel" while in Recovery Court did not guarantee the assignment of a new attorney. See State v. Harris, 384 N.J. Super. 29, 59 (App. Div. 2006) ("[A] court may not require the Public Defender to assign new counsel to a defendant who [is] dissatisfied with the attorney assigned to represent him [or her] absent a showing of 'substantial cause.'" (quoting State v. Coon, 314 N.J. Super. 426, 438 (App. Div. 1998))).

To the extent we have not specifically addressed any of defendant's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0943-23